IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:22-cr-010-03 |
| v. | **PLEA AGREEMENT** |
| DAVID ROBERT NOWLAN, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the

United States of America, by its attorneys, Mac Schneider, United States Attorney for the

District of North Dakota, and Christopher C. Myers, Assistant United States Attorney;

Defendant, DAVID ROBERT NOWLAN; and Defendant's counsel, Tatum O'Brien,

agree to the following:

1.      Defendant acknowledges the Third Superseding Indictment charges

violations of Title 21, United States Code, Sections 846, 853, and 963, and Title 18,

United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 924(d)(1), 982(a)(1), 1503,

1512(i), 1956(h), and 2, and Title 28, United States Code, Section 2461(c).

2.      Defendant has read the charges and Defendant's attorney has fully

explained the charges to Defendant.

3.      Defendant fully understands the nature and elements of the charged crimes.

4.      Defendant will voluntarily plead guilty to Counts One and Three of the

Third Superseding Indictment, and admit to Forfeiture Allegation Two.

5.      The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.      Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Counts One and Three, Defendant acknowledges that as to Count One:

From in or about January 2019 and continuously until the date of this Third Superseding Indictment, in the Districts of North Dakota, Minnesota, South Dakota, Wisconsin, Nebraska, and elsewhere,

> MACALLA LEE KNOTT, a/k/a KAYLA;
> JEFFREY ROBERT KNOTT;
> DAVID ROBERT NOWLAN;
> TIFFANY NINA KEOMANY;
> TYLER NEIL PELZER;
> DEMIAN HEBERT;
> OLIVER LOUIS DYLLA;
> ███████████████████;
> JAMES WARREN GARNER;
> ROBERT BLAIR GJEVRE; and
> BRADY ROBERT LUDUSCHER

did knowingly and intentionally combine, conspire, confederate, and agree together with Joseph Paul Myers Jr.; Robert Jon Ratka; Melanie Ann Quick; and Mary Rose Thompson, currently indicted in the District of North Dakota, in Case No. 3:22-cr-00011,

2

and others, both known and unknown to the grand jury, to possess with intent to

distribute and distribute 500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine, a Schedule II controlled substance; in excess of

5 kilograms of a mixture and substance containing cocaine, a Schedule II controlled

substance; and a mixture and substance containing a detectable amount of fentanyl[1], a

Schedule II controlled substance, in violation of Title 21, United States Code, Section

841(a)(1), and Title 18, United States Code, Section 2.

Drug Quantity Finding

The grand jury specifically finds that to each of the named defendants, this conspiracy

moved more than 500 grams of a mixture and substance containing a detectable amount of

methamphetamine, a Schedule II controlled substance, as provided in 21 U.S.C.

§ 841(b)(1)(A)(viii). The grand jury specifically finds that to each of the named defendants,

this conspiracy moved more than 5 kilograms of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance, as provided in 21 U.S.C.

§ 841(b)(1)(A)(ii).  The grand jury specifically finds that to each of the named defendants,

this conspiracy moved more than 400 grams of a mixture and substance containing fentanyl, a

Schedule II controlled substance, as provided in 21 U.S.C. § 841(b)(1)(A)(vi). These amounts

are attributable to the defendants as a result of their conduct and the conduct of other co-

conspirators that was reasonably foreseeable to them.

---

[1] 21 U.S.C. § 841(b)(1)(A)(vi):  The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

### Prior Convictions

In accordance with Title 21, United States Code, Sections 841 and 851, the grand jury finds the following:

Before DAVID ROBERT NOWLAN committed the offenses charged in this Third Superseding Indictment, DAVID ROBERT NOWLAN had a final conviction for the following serious drug felony for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense: Controlled Substance Crime – 2nd Degree, in violation of Minnesota Statute § 152.022.2 (a)(1), in Stearns County, Minnesota, in Case No. 73-CR-14-667, Judgment entered on October 2, 2014, in District Court, 7th Judicial District.

### Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. Members of the conspiracy were receiving controlled substances directly from the Sinaloa cartel in Mexico. Controlled substances were imported into the United States and transported and shipped to Minnesota, North Dakota, and elsewhere in the United States for distribution. Members of the conspiracy paid money for these controlled substances directly or indirectly to Sinaloa cartel members in the United States and Mexico;

2. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a

4

mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

3. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 5 kilograms of a detectable amount of cocaine, a Schedule II controlled substance, within the states of Minnesota, Wisconsin, and elsewhere;

4. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 400 grams of a detectable amount of fentanyl, a Schedule II controlled substance, within the states of Minnesota, Nebraska, and elsewhere;

5. It was further a part of said conspiracy that the defendants and others would and did use violence and the threat of violence to ensure payment and to attempt to conceal their activities;

6. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including various smart phone applications, in an effort to hide illicit communications from law enforcement;

7. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

8. On September 15, 2021, co-conspirators distributed approximately 28 grams (one ounce) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

5

9. On September 21, 2021, co-conspirators distributed approximately 14 grams (1/2 ounce) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

10. On September 28, 2021, co-conspirators distributed approximately 113 grams (4 ounces) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

11. On October 7, 2021, co-conspirators possessed approximately 453 grams (1 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Fargo, North Dakota;

12. On October 20, 2021, co-conspirators possessed approximately 453 grams (1 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Alexandria, Minnesota;

13. On October 21, 2021, co-conspirators possessed approximately 2,265 grams (5 pounds) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Melrose, Minnesota;

14. On January 12, 2022, co-conspirator DAVID ROBERT NOWLAN possessed approximately 850 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 100 grams of a

mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

15. On February 24, 2022, co-conspirators possessed approximately 27 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Rapid City, South Dakota;

16. On April 7, 2022, co-conspirator E.A.L. possessed approximately 15 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Carlton, Minnesota;

17. On June 27, 2022, co-conspirator R.E.R. possessed approximately 1/2 pound of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

18. On August 30, 2022, a co-conspirator possessed approximately 226 grams (1/2 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 1,000 grams (1 kilogram) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

19. On August 30, 2022, co-conspirators possessed approximately 100 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 9 pounds of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in Nebraska;

7

20.  On August 31, 2022, a co-conspirator possessed approximately 1,000 grams (1 kilogram) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Paul, Minnesota; and

21.  Defendant MACALLA LEE KNOTT, a/k/a KAYLA, was a leader, organizer, manager, and supervisor in this conspiracy;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

As to Count Three, Defendant acknowledges that:

On or about January 12, 2022, in the District of Minnesota,

### DAVID ROBERT NOWLAN

did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: DAVID ROBERT NOWLAN did knowingly possess a firearm, namely, a Glock 27, Generation 4, .40 caliber firearm, serial number VWP361, which said firearm is a machinegun, in furtherance of the drug trafficking crimes set forth in Counts One and Two of this Third Superseding Indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and 2.

As to Forfeiture Allegation Two, Defendant admits that upon the conviction of Count Three as alleged in this Third Superseding Indictment,

### DAVID ROBERT NOWLAN

8

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), all firearms involved in the commission of the offense, including, but not limited to:

- One Glock 27, Generation 4, .40 caliber firearm, serial number VWP361.

7.    Defendant understands the following maximum penalties apply:

Count One

| | |
|---|---|
| Imprisonment: | Life; 15 year minimum-mandatory |
| Fine: | $20 million |
| Supervised Release: | 10 years |
| Special Assessment: | $100 |

Count Three

| | |
|---|---|
| Imprisonment: | Life; 30 year minimum-mandatory consecutive |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8.    Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a)    The right to a speedy public jury trial and related rights as follow:

(i)    A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by

9

exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)     If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)    At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)    At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b)     Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.    Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2021) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11.    This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.    Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13.    The parties agree that the base offense level under the Sentencing Guidelines for Defendant's conduct is 38. (USSG § 2D1.1(c)(1) (Reasonably foreseeable

11

conspiracy involved more than 45 kilograms of a mixture containing methamphetamine). The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14.     At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15.     The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16.     Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable

12

guidelines range if the Court, on the record, states factors not contemplated by the

Sentencing Guidelines' Commission to justify the departure. Both parties reserve the

right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines

"departure"). There may be other adjustments the parties have not agreed upon.

    17.    At sentencing, the United States will:

    (a)    Recommend a sentence at the low end of the applicable Guideline

range, or the minimum mandatory, whichever is greater;

    (b)    Move to dismiss the remaining counts of the Third Superseding

Indictment.

    18.    Defendant acknowledges and understands that if Defendant violates any

term of this Plea Agreement, engages in any further criminal activity, or fails to appear

for sentencing, the United States will be released from its commitments. In that event,

this Plea Agreement shall become null and void at the discretion of the United States, and

Defendant will face the following consequences: (1) all testimony and other information

Defendant has provided at any time to attorneys, employees, or law enforcement officers

of the government, to the Court, or to the Federal Grand Jury, may be used against

Defendant in any prosecution or proceeding; and (2) the United States will be entitled to

reinstate previously dismissed charges and/or pursue additional charges against

Defendant and to use any information obtained directly or indirectly from Defendant in

those additional prosecutions. Nothing in this agreement prevents the United States from

prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant

commits such acts in connection with this agreement or otherwise.

19.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Third Superseding Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21.     **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack:  Defendant's conviction or sentence; all non-jurisdictional

issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22.     By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23.     The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24.     Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the

United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

25.     Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. AGREED:

MAC SCHNEIDER
United States Attorney

Dated:   7/27/2023

By: CHRISTOPHER C. MYERS
Assistant United States Attorney

Dated:   7- /0

DAVID ROBERT NOWLAN
Defendant

Dated:   7/26/23

TATUM O'BRIEN
Attorney for Defendant

16